```
                 UNITED STATES DISTRICT COURT

                  DISTRICT OF NEW HAMPSHIRE
```

ANSYS, Inc.,
    Plaintiff

    v.                                            Civil No. 09-cv-284-SM
                                                       Opinion No. 2011 DNH 025
Computational Dynamics North America,
Limited, d/b/a CD-adapco, and
Doru A. Caraeni, Ph.D.,
    Defendants


**O R D E R**

After one of ANSYS's highly skilled physicists left to work for its primary competitor, Computational Dynamics North America ("CDNA"), ANSYS brought this suit seeking to enforce its former employee's covenant not to compete. It also sought damages from both the former employee and CDNA for misappropriation of trade secrets. Failing to obtain temporary injunctive relief from this court, or the court of appeals, ANSYS decided to withdraw its claims against both defendants and has moved the court to dismiss all pending claims, with prejudice. Defendants object, at least in part, and move the court to condition dismissal of ANSYS's claims on the payment of costs and attorney's fees, totaling nearly $200,000.

For the reasons discussed below, ANSYS's motion for voluntary dismissal with prejudice is granted. Defendants'

motion is denied to the extent it seeks an award of attorney's fees. ANSYS's request for an award of reasonable costs is referred to the Clerk of Court in the first instance.

## Background

For approximately seven years, Dr. Doru Caraeni worked for ANSYS, developing code for software used in computational fluid dynamics simulations. In May of 2009, not long after his wife left ANSYS's employ, Caraeni resigned his own position and went to work for its largest competitor, CDNA. But, just days before leaving ANSYS, he accessed (and apparently downloaded) several highly secret documents that ANSYS had prepared, including a "strategic, technical comparison" of how its software product compared to CDNA's product. See Transcript of Hearing on CDNA's Request for Fees at 23. Those documents also described the "architecture and functionality" of ANSYS's software. Id. at 22. Not surprisingly, ANSYS was troubled both by the fact that Caraeni decided to download those materials - materials he did not need to access to perform his job at ANSYS - and by the timing of that decision. Caraeni's conduct was suspicious under the circumstances (and never adequately explained), and ANSYS was understandably concerned.

Three months later, ANSYS filed this suit against CDNA and Caraeni, seeking preliminary and permanent injunctive relief, as well as compensatory damages.  Specifically, ANSYS advanced the following five claims: breach of contract (covenant not to compete) against Caraeni; breach of contract (non-disclosure) against Caraeni; intentional interference with contractual relations against CDNA; misappropriation of trade secrets against Caraeni and CDNA; and unfair trade practices against CDNA.

This court denied ANSYS's request for preliminary injunctive relief and that decision was affirmed on appeal.  <u>ANSYS, Inc. v. Computational Dynamics N. Am., Ltd.</u>, 595 F.3d 75 (1st Cir. 2010).  Litigation of the merits proceeded, and the parties quickly became involved in ongoing disputes over the timing, scope, and direction of discovery.  Accordingly, in an effort to provide some guidance to counsel (and to contain at least some of the costs being borne by their clients), the court established a tiered discovery process, focusing first on ANSYS's trade secrets claims, while leaving discovery on the breach of contract (i.e., covenant not to compete) and other claims for a later date.

> A status conference was held on July 29, 2010, to discuss continuing difficulties between the parties in moving discovery along in a reasonable fashion. Central to plaintiff's case is its assertion that Dr. Doru Caraeni, and through him, CDNA, misappropriated its trade secrets.  Defendants were to provide discovery related to Dr. Caraeni's work for CDNA and

3

>
> plaintiff was to expertly analyze that material to
> determine whether, in good faith, a misappropriation
> claim should continue to be pursued. Presumably,
> plaintiff has in mind specific trade secrets it thinks
> have been misappropriated, as well as some reason to
> believe they were misappropriated, and a qualified
> expert should be able to discern from Dr. Caraeni's
> work whether a specific misappropriation claim is
> plausible.
>
> * * *
>
> The court is not inclined to hold regular discovery
> hearings at which every conceivable construction of
> language supporting or precluding disclosure must be
> refereed. Accordingly, the following orders are
> entered:
>
> 1. Discovery related to any claim other than the
>    misappropriation of trade secrets claim is stayed
>    until further order of the court.
>
> 2. Defendants will produce, on a rolling basis and by
>    August 30, 2010, all work product created by Dr.
>    Caraeni, including (for example) limited, spliced
>    sections of code that Caraeni has developed for
>    CDNA since he started working there. Defendants
>    will also produce summary descriptions of the
>    projects (i.e., work-focused activity) Dr. Caraeni
>    worked on in a manner sufficient to permit an
>    ANSYS expert to fairly evaluate Dr. Caraeni's work
>    product relative to ANSYS' trade secrets claim.
>
> 3. Plaintiff will advise defendants no later than
>    October 29, 2010, whether it will pursue or drop
>    the misappropriation of trade secrets claim.

Discovery Order (Aug. 4, 2010) (document no. 63) at 1-2. As the

court had previously noted, the point of staged discovery was

fairly straight-forward: "Should ANSYS's expert conclude that its

claims against CDNA and/or Caraeni lack merit, ANSYS can bow out

gracefully. If, on the other hand, ANSYS believes it has a good

4

faith basis to pursue those claims, it can then decide how it wishes to proceed."  Order (April 2, 2010) (document no 51) at 4.

Defendants then set about gathering the information identified above for submission to plaintiff's expert.  While it is unclear whether defendants complied with the court's order to provide relevant discovery on a "rolling basis," that point is not terribly important now.  The relevant facts are as follows.  Shortly before CDNA says it planned to turn over the majority of relevant discovery, ANSYS notified defendants of its decision to voluntarily dismiss its claims against both CDNA and Caraeni.  Defendants cried foul, claiming ANSYS had acted in bad faith and had unreasonably drawn out this litigation simply to force defendants to incur substantial attorney's fees.  Specifically, defendants assert that "ANSYS did not have a good faith basis in maintaining the misappropriation lawsuit beyond the appeal to the First Circuit."  Defendant's memorandum (document no. 65-1) at 1.  See also Id. at 11 ("ANSYS prolonged the misappropriation claim in bad faith after the appeal to the First Circuit.").  They now seek nearly $200,000 in costs and attorney's fees - a figure they say represents merely a portion of their total expenses in this case, and an amount attributable only to post-appeal discovery and motions practice.

**Governing Legal Principles**

In support of their request for attorney's fees, defendants invoke provisions of New Hampshire's Uniform Trade Secrets Act, N.H. Rev. Stat. Ann. ("RSA") 350-B:4, as well as New Hampshire common law. See Defendants' memorandum (document no. 65-1) at 8. See also Transcript of Hearing on CDNA's Request for Fees at 37 ("The request for attorney's fees is brought under the Uniform Trade Secrets Act. We are saying, your Honor, that this claim was made or prolonged in bad faith."). That statute provides, in relevant part, that the "court may award reasonable attorney's fee to the prevailing party when . . . a claim of misappropriation is made in bad faith." RSA 350-B:4 I (emphasis supplied).

Although the statute does not specifically define what it means to pursue a misappropriation claim in "bad faith," the phrase has a well-accepted meaning in New Hampshire's common law:

> A party pursues a claim in bad faith if the claim is frivolous. A frivolous claim lacks any reasonable basis in the facts provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be.

Kukene v. Genualdo, 145 N.H. 1, 3 (2000) (citations and internal punctuation omitted). See also Pugliese v. Northwood Planning

Bd., 119 N.H. 743, 752 (1979) (equating "bad faith" with "obstinate, unjust, vexatious, wanton, or oppressive conduct").

So, to prevail on their request for an award of attorney's fees, defendants must first demonstrate that this is one of those rare cases in which such an award is warranted. And, consistent with their theory of recovery, they must show that ANSYS acted in bad faith when it continued to pursue its trade secrets claim after the court of appeals affirmed this court's denial of ANSYS's request for injunctive relief.

If they can show that ANSYS acted in bad faith, defendants must then also establish the reasonableness of: (1) the time billed by their attorneys for various tasks related to this case; and (2) the rates charged for those legal services.[1] See, e.g., McCabe v. Arcidy, 138 N.H. 20, 29 (1993) (noting that relevant factors for the court to weigh when considering a fee award are: the nature, novelty, and difficulty of the litigation; the attorney's skill and reputation in the area; the amount of time

---

[1] ANSYS does not contest the reasonableness of the rates charged by CDNA's counsel (and those rates seem comfortably within the range customarily charged in this district). But ANSYS does contest the reasonableness of the time spent on the discovery tasks described. The total amount sought by CDNA does seem rather high. CDNA does not offer much by way of justification for the time spent, but denial of the motion renders the point moot.

he or she reasonably devoted to the matter; the customary fees in the area; the extent to which the attorney prevailed; and the benefit thereby bestowed on his or her clients). See also <u>Coutin v. Young & Rubicam Puerto Rico, Inc.</u>, 124 F.3d 331, 337 (1st Cir. 1997)(noting that, in this circuit, the "starting point in constructing a fee award" is the "lodestar method," by which "the number of hours reasonably expended on the litigation [are] multiplied by a reasonable hourly rate.")(citation and internal punctuation omitted).

## Discussion

That ANSYS was unable to demonstrate entitlement to temporary injunctive relief on its <u>contract</u> claim (i.e., Caraeni's one-year noncompetition agreement) does not compel the conclusion that its trade secret misappropriation claim was brought in bad faith. Even if ANSYS had sought, but failed to obtain, temporary injunctive relief on its <u>trade secrets claim</u>, that fact alone would not necessarily compel the conclusion that the claim was frivolous or that ANSYS acted in bad faith. As the New Hampshire Supreme Court has observed:

> [A] denial of a preliminary injunction is not by itself
> a determination that the underlying case is frivolous.
> Although a party seeking an injunction must show that
> it would likely succeed on the merits, injunctive
> relief is an equitable remedy, requiring the trial
> court to consider the circumstances of the case and
> balance the harm to each party if relief were granted.

> A preliminary injunction is a provisional remedy that preserves the status quo pending a final determination of the case on the merits.  A denial of a preliminary injunction based on the failure to show a likelihood of success should not constitute a judgment that the underlying claim is frivolous, foreclosing a trial. Therefore, the defendant's contention that the denial of the preliminary injunction gave the plaintiffs notice that their evidence was inadequate and that it would be in bad faith for them to proceed on the same evidence is without merit.

Kukene, 145 N.H. at 4 (citations and internal punctuation omitted).

Nevertheless, in support of their motion for attorney's fees, defendants assert that:

> It is now clear that ANSYS never had any good faith basis for pursuing this lawsuit, and was instead counting on being permitted to rummage through, in fishing-expedition style, all of CDNA's code and electronic data, including the work of multiple individuals, tying up and distracting CDNA from its business, before ANSYS would be required to support its case.  When it was not allowed to do so and was forced to face the reality of how it would have to support its claims without any real evidence of misappropriation, it decided to quit.

Defendants' memorandum at 4.  As evidence of ANSYS's "objective bad faith" in "prolong[ing] the misappropriation claim . . . . after the appeal to the First Circuit," defendant's memorandum at 11, defendants point to the following:

> (1) ANSYS has made and failed to prove similar allegations on a prior occasion in state court; (2)

>    despite a duty to do so and a year having passed since
>    the lawsuit was filed, ANSYS has repeatedly failed to
>    identify with particularity the trade secrets that it
>    alleges are at issue; (3) the information cited by
>    ANSYS as its trade secrets during the preliminary
>    injunction stage were merely general principles of
>    physics that are publically available; (4) ANSYS
>    claimed that it was unable to identify its own trade
>    secrets until defendants first identified their trade
>    secrets, which strongly indicates that ANSYS did not
>    file the lawsuit with a specific set of trade secrets
>    that it believed to be at risk; (5) ANSYS has yet to
>    allege any actual use or misuse of its trade secrets by
>    either defendant; (6) ANSYS withdrew its claims on the
>    eve of, and without review of, the production it
>    claimed it needed; and (7) ANSYS prolonged the
>    misappropriation claim for six months after the First
>    Circuit denied ANSYS' appeal, but ANSYS now claims that
>    its misappropriation claim was not really the main
>    reason it filed suit.

Id. at 11-12.  According to defendants, "This is sufficient objective evidence of ANSYS' bad faith to award attorneys' fees and costs to defendants under New Hampshire law."  Id. at 12.  The court disagrees.

    First, it probably bears noting that, when reviewing this court's denial of ANSYS's motion for preliminary injunctive relief, the court of appeals observed that, "[w]hile we think this case is close, we cannot say the court abused its discretion."  ANSYS, Inc. v. Computational Dynamics N. Am. Ltd., 595 F.3d at 78.  That observation suggests that had the court of appeals been applying a less deferential standard of review, it might well have granted ANSYS's motion, the merits being "close."

Next, defendants' reference to state court litigation involving the same parties from more than 10 years ago is hardly evidence of ANSYS's bad faith in this case. That is particularly true since the earlier dispute between the parties was resolved against ANSYS because, unlike in this case, it had failed to obtain a covenant not to compete from an employee that left its ranks and went to work for CDNA.

As to defendants' claim that "despite a duty to do so and a year having passed since the lawsuit was filed, ANSYS has repeatedly failed to identify with particularity the trade secrets that it alleges are at issue," the facts of this case suggest otherwise. While ANSYS acknowledges that it was unable to specifically identify which (if any) trade secrets Caraeni had misappropriated until it had reviewed the work he had done for CDNA (an entirely understandable position), it did specifically identify: (1) the unusual and suspicious behavior that Caraeni engaged in prior to his departure for CDNA; and (2) the type of trade secrets which Caraeni had access to and might have shared with CDNA. See Plaintiff's memorandum (document no. 72) at 6-7. At issue here was not a simple customer list, or a fabrication formula, or mechanical plans, but highly complicated and sophisticated mathematical formulations used in complex software programs, and a perhaps useful technical comparison between the

11

products competing — the types of "secrets" that only a highly trained and sophisticated expert could recognize as having been used or incorporated in the competitor's program (or not).

Little more need be said on this issue. It is sufficient to note that when stripped of hyperbole, defendants' memorandum provides little support for their request for attorney's fees and defendants have failed to demonstrate that ANSYS acted in bad faith in pursuing its misappropriation claims. In fact, a plausible reading of the record evidence suggests that, after due consideration, ANSYS determined, perhaps even reluctantly, that the costs of pursuing its claims in terms of money, distraction, and effort - claims that, under the circumstances, would be difficult to prove notwithstanding their merit - were simply too great. ANSYS did not pursue frivolous claims lacking any reasonable basis in fact or law.

## Conclusion

For the foregoing reasons, as well as those set forth in ANSYS's memorandum (document no. 72), the court declines to exercise its discretion to award fees in this case and defendants' motion for attorney's fees (document no. 65) is denied. CDNA's request for reimbursement of costs reasonably

incurred during the course of this litigation is referred to the Clerk of Court.  <u>See</u> Local Rule 54.1 ("Bill of Costs").

Plaintiff's motion for voluntary dismissal with prejudice (document no. 64) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

February 10, 2011

cc:  Cameron G. Shilling, Esq.
     Cathryn E. Vaughn, Esq.
     Elizabeth K. Rattigan, Esq.
     Geoffrey J. Vitt, Esq.
     Michael A. Schlanger, Esq.
     Shelli L. Calland, Esq.